66 ′   331
100a  ³175

# The First National Bank of Monmouth

*v.*

# James M. Whitman *et al.*

1.  Surety—*whether released by surrender of collateral.* At the time of the execution of a note to a bank, the principal deposited with the bank certain other notes as collaterals for the protection of the surety in his note. The surety then left the United States, giving his brother a general power of attorney to transact any and all his business. After this note had matured, and before the surety's return, the principal induced the bank, with the consent of the surety's brother and agent, to discount a $325 note, one of the collaterals, of which $100 was paid to the principal, $150 applied in payment of another note the bank held on him and others, $35 applied to balance the principal's bank account, and the balance of $32.44 credited upon the note sued on. In a suit on the note against the principal and surety, it was set up in defense that the consent of the agent was procured by means of representations by the bank that it held the collaterals as general security for what the principal owed them, and that such consent was upon the condition that the bank would assign the $150 note to the agent of the surety, but that the bank surrendered the same to one of the makers, who delivered the same to the agent, whereby it was extinguished. It also appeared that the principal gave the agent another collateral in the place of that surrendered, and that the agent received the $150 note knowing it to have been paid: *Held*, that an instruction to the jury to find for the defendant, if they found from the evidence that the collateral was surrendered to the principal under the arrangement made between the plaintiff, the principal, and the agent, and by means of the representations as alleged in the plea, was erroneous in not leaving the jury to find whether the agent did not assent to the payment of the $150 note, and did not receive it after its payment without indorsement and without objection, and as entirely ignoring the fact that other collateral security was taken by the agent in lieu of that surrendered by the bank.

2.  In such a case the instruction should have been so modified as to have left it to the jury to say whether the $325 note, held as collateral, was wrongfully perverted without the consent of the agent of the surety; and it should have distinctly stated what would constitute fraud as alleged in the plea, without a general reference to the plea.

3.  Same—*extending time of payment to principal.* Where the court instructed the jury, in a suit upon a note against a surety, in behalf of the latter, in respect to an extension of time of payment, which was made

with the knowledge and, as it was contended, with the consent of an agent of the surety duly authorized, that if such extension was made without the consent or knowledge of the surety, they should find for the defendant: *Held,* that the instruction was erroneous and highly calculated to mislead the jury by leading them to believe that the personal consent of the defendant was necessary, and that the consent of his agent would not be sufficient.

4.  Same—*instruction ignoring important fact.*  Where there was proof tending to show that an extension of time for payment given the principal debtor, was allowed with the consent of the surety's agent, and that the surety, upon his return, with a knowledge of the facts, promised to see the debt paid, an instruction given at the request of the surety in a suit against him on the note, in regard to the effect of such extension as releasing him, which failed to leave it to the jury to find whether the agent consented to the extension, and whether the defendant promised payment afterwards with a knowledge of the facts, was held erroneous.

5.  Where an extension is given for the payment of a note, to the principal maker, in the absence and without the consent of the surety, if the latter, upon being acquainted with the facts and circumstances, promises to see the note paid, this will bind him to its payment, notwithstanding he would otherwise be released by such extension.

6.  Same—*release by neglect to sue in pursuance of contemporaneous verbal agreement.*  In a suit upon a note by the payee against the principal and surety as makers, the court, at the instance of the surety, instructed the jury, if they believed from the evidence that at the time of the execution of the note and before signing the same, and in consideration thereof, the defendant surety instructed plaintiff to sue and collect the same at its maturity, and that the defendant signed it as surety for the other maker under such arrangement and agreement, then the plaintiff was bound to sue upon the note, and at least try to collect the same, and if the plaintiff failed to do so, they should find for the defendant: *Held,* that the instruction was erroneous, as the written statutory notice to sue was not given, and otherwise it sought to modify and vary the written contract of the parties by parol testimony.

7.  Evidence—*to vary written contract.*  The rule is familiar that verbal testimony can not be received to alter, modify or vary a written agreement.

Appeal from the Circuit Court of Warren county; the Hon. Arthur A. Smith, Judge, presiding.

This was an action of assumpsit, by the appellant, against James M. Whitman and Alexander G. Kirkpatrick, upon a

promissory note.  Whitman interposed two pleas, setting up his discharge under proceedings in bankruptcy, to which replications were filed denying the facts alleged in the pleas.

The defendant Kirkpatrick filed several pleas : 1, the general issue; 2, *nul tiel corporation*, and various special pleas, setting up that he was surety on the note, and various matters in discharge of his liability, the substance of which may be gathered from the opinion of the court.  The representations referred to in the defendant's fourth instruction, as stated in the fifth plea, are, that plaintiff, without the knowledge or consent of the defendant, and while he was absent from the United States, went to J. M. Kirkpatrick, and fraudulently and deceitfully represented to him that the Webb contract and notes were held by the plaintiff as general security for all debts due said plaintiff, and proposed to take said note of $325, due in six months, to pay off a certain note then due the plaintiff from J. M. Whitman & Co., dated Jan. 5, 1867, and due one day after date, with ten per cent interest, for $150, and also a bank account against Whitman for $35.21, and that J. M. Kirkpatrick agreed that the $325 note should be so used, provided the plaintiff would assign to the defendant Kirkpatrick said note of J. M. Whitman & Co.; and the plaintiff agreed so to do ; that said note of $325 was, on the same day, used by plaintiff for said purpose, so that the same was lost by plaintiff as security as aforesaid, but the plaintiff, in violation of the terms of said last mentioned agreement, unlawfully and fraudulently failed and refused to assign said note of $150 to the defendant Kirkpatrick, but, on the contrary, delivered up said note to the defendant Whitman, one of the makers thereof, whereby the defendant Kirkpatrick, being security, became released and discharged from all liability from the note sued on, etc.

The plaintiff filed two replications to this plea.  The first denied that the collaterals described were delivered to the plaintiff for the purpose and under the agreement, and for the purpose the defendant had charged and averred in his plea.

The second denied that the Webb note for $325, mentioned in the plea, was surrendered and delivered up to said defendant Whitman in the manner and under the agreement, and by means of the representation alleged in the plea.

The other material facts are stated in the opinion.

Messrs. Miller, Frost & Lewis, and Mr. John J. Glenn, for the appellant.

Messrs. Harding, McCoy & Pratt, for the appellees.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of assumpsit, brought by appellant in the circuit court of Warren county, against appellees, on a promissory note executed by James M. Whitman and Alexander G. Kirkpatrick, deceased, and of whose estate Alonzo Patterson is the administrator. The note was for $1000, dated June 8, 1867, payable with ten per cent interest after maturity, and due in sixty days from date. A number of pleas were filed and issues formed, upon which a trial was had, resulting in a verdict in favor of defendants. After overruling a motion for a new trial, the court below rendered judgment on the verdict, from which plaintiff prosecutes this appeal.

It appears that the note sued on was given in renewal of a previously given note, and was the third or fourth time the payment of the debt had been extended and renewal notes given.

It appears that Kirkpatrick was on the eve of starting for Europe when the note was given. At the time, some notes, payable to Whitman, amounting to about $1300, and a bond for the conveyance of some real estate, were left with the bank as collateral security. Kirkpatrick, before leaving, appointed his brother his attorney in fact, and conferred upon him full power to transact any and all of his business.

· After the note had matured, and before Kirkpatrick's return from Europe, Whitman induced the bank, with the consent of J. M. Kirkpatrick, to discount a $325 note that had been placed in the bank as collateral security. One hundred dollars of the amount was paid in money to Whitman, one hundred and fifty dollars was applied in discharge of a note for that sum held by the bank against him, and others, thirty-five dollars was applied to balance Whitman's account with the bank, and the remainder, thirty-two dollars and forty-four cents, was credited on the note in controversy.

It is contended that this was a perversion of a portion of the fund held as collateral security, and was fraudulently done, and thereby released Kirkpatrick, who was only surety on the note, from its payment. The other side contend that the arrangement was made with the full assent and concurrence of Kirkpatrick's agent, fully empowered to act, and that Kirkpatrick, after his return from Europe, agreed to pay the note, Whitman having previously been declared a bankrupt. It is also contended by appellees that, at the time this collateral note was discounted, time for payment was extended by agreement without the assent of the surety, in consideration of the payment of the $32.44, in advance, on the interest. On the other hand, it is contended that there was no such extension of time, but if there was, that it was with the assent of the attorney in fact, and that Kirkpatrick, on his return from Europe, fully recognized his liability and agreed to pay the note.

It is also urged that, when the note was given, Kirkpatrick directed the bank to sue the principal on its maturity and to collect the money, but the bank had disregarded the instruction, whereby the surety became released.

It is urged, as ground of reversal, that the court below misdirected the jury on these issues in the instructions given for appellees. Their fifth is this :

"If the jury believe, from the evidence, that the notes and contract, made by Wm. M. Webb, and payable to H. M.

Whitman, were delivered to the plaintiff for the purpose, and under and by virtue of the agreement that such securities were to be held by the bank, as security for the defendant, Kirkpatrick, to secure him as security on the Whitman note, and that the note of $325, one of said notes so deposited as aforesaid, was surrendered to Whitman under the arrangement made between said plaintiff, said Whitman and said J. M. Kirkpatrick, and by means of the representations, as alleged in said fifth plea, then the jury should find for the defendant, because these two facts are the only issues presented by the plaintiff to be tried in this case under said fifth plea."

This instruction is erroneous, in not leaving the jury to find whether Kirkpatrick's agent did not assent to the payment of the $150 note, and did not receive it after it was paid, and without indorsement, and without objection. Even if it was agreed by all parties, the attorney in fact as well as the others, that the $150 note should be paid and then assigned to Kirkpatrick, we fail to see how the note could be collected; being extinguished by payment, it was no longer negotiable; but, even conceding that it was, the jury might fairly infer, from the evidence, that J. M. Kirkpatrick received that note, knowing it was paid, and without assignment, and made no objections. And J. M. Kirkpatrick, at the time, received a note for $525 on the brothers of Whitman, as collateral, and in lieu of the $325 note then discounted. This important fact was entirely ignored in the instruction. If this $525 note was received by the agent alone as the consideration for giving up the note that was discounted, then there could be no pretense that there was any, the slightest wrong or injury inflicted on the surety. This instruction should have been modified so as to have left it to the jury to say whether the $325 note, held as collateral, was wrongfully perverted without the consent of J. M. Kirkpatrick, the agent of his brother, who was the maker; and it should have distinctly stated what would constitute fraud as alleged in the plea, without a general reference to it.

It is insisted that the seventh instruction, given for appellees, is erroneous. It is this:

"If the jury believe, from the evidence, that the bank had the notes and contract of Webb, and claimed to hold them generally for all debts then due it from Whitman, defendant, and that, by arrangement with Whitman, the bank agreed that the time should be extended until Kirkpatrick's return from Europe, or any other definite time, provided the three notes and contract should be placed in the hands of the bank by Whitman as special security for the payment of the note in suit, then such agreement, and the giving of such special security, was a sufficient consideration for such extended time upon the note, and if such extension was made without the consent or knowledge of Kirkpatrick, then the jury should find for the defendant."

This instruction is manifestly wrong, and highly calculated to mislead the jury. We are not prepared to say that there was not evidence before the jury that would have warranted them in drawing the inference that, if time was extended for the payment of the note, J. M. Kirkpatrick, as the agent of his brother, consented to it. He seems to have been present and to have participated in all that was done, and if it can be inferred from the evidence that time was given, he must have known it. There is no evidence in the case that the cashier and Whitman had any private understanding or agreement for an extension of time. If J. M. Kirkpatrick knew of and assented to an extension of time for payment, he being fully empowered to act for his brother, the latter would be bound by his assent. This instruction confines the consent to the surety, and the jury may have well understood the instruction to mean that the personal assent of the surety was necessary, and that the agent could not consent. And we fail to see that there was any new agreement entered into that the then remaining notes on Webb should be placed in the hands of the bank as collateral security for the note in controversy.

22—66TH ILL

We perceive no evidence upon which to base such an instruction. The evidence shows these notes were so placed in the bank about the time the note was given, but not after it matured.

The eighth instruction is subject to the same objections. It ignores all consent of the agent, whilst we have seen, under his general power, he was capable of acting, and if he expressly or impliedly consented to an extension, his principal would be as effectually bound as though he had personally consented.

Again, these instructions are both erroneous, in not leaving the jury to find whether Kirkpatrick had not, on his return, promised to pay the note. Hubbard testified that, on his return, he promised to see that it was settled. This promise, if made, and Kirkpatrick knew the circumstances, would bind him for its payment, although an extension of time was given without the assent of his agent. If such a promise was made, the jury, under these instructions, would, nevertheless, have been compelled to find for the defendants. These instructions should have been so modified as to have left that question to the jury, or they should have been refused.

It is also urged that the ninth of appellees' instructions was erroneous, and misled the jury. It is as follows:

"If the jury believe, from the evidence, that, at the time of the execution of the note sued on, and before signing the same, and in consideration thereof, the defendant, Kirkpatrick, instructed the plaintiff to sue and collect the note at the time it became due, and that the note was signed by Kirkpatrick as security for Whitman, under such arrangement and agreement, then the plaintiff was bound to sue the note, and, at least, try to collect the same, and if the plaintiff has failed so to do, then the jury should find for the defendant."

In the case of *Ward* v. *Stout*, 32 Ill. 399, it was held that, under the first section of chapter 97, the notice by the surety to the payee to bring suit, must be in writing, to operate as a

discharge of the surety.   There is no pretense in this case that such notice was given.   And if it be relied upon as a part of the agreement, at the time the note was given, that the payee should sue at maturity, then it was not embraced in the note as a part of the written agreement.   And the rule is familiar, that verbal testimony can not be received to alter, modify or vary a written agreement.   Hence, this evidence was entirely incompetent and should have been excluded from the jury.

For the errors indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*